UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SIX DIMENSIONS, INC.,

                          Plaintiff,

        -against-                    INDEX NO.  15-cv-08309(PGG)(BCM)

PERFICIENT, INC. AND LYNN M. BRADING,

                          Defendants.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF BRADING'S MOTION TO DISMISS**

Plaintiff Six Dimensions' opposition to Brading's motion to dismiss is largely, with all due respect, incoherent. Throughout its papers, Six Dimensions fails to distinguish between the "Defendants" in this case, flouts the legal standard for a motion to dismiss by citing to materials outside its Second Amended Complaint,[1] entirely disregards on-point authorities cited by Brading, and simply repeats and recites the conclusory allegations in its Complaint, mostly without any legal support for its arguments other than undisputed legal standards. Tellingly, its claims are so deficient that Six Dimensions does not even request an opportunity to replead to cure its deficiencies. As stated in Brading's moving papers and further illustrated below, the claims against Brading must be dismissed with prejudice or, alternatively, dismissed for improper venue or transferred for *non conveniens*.

I.   **Plaintiff Cannot State a Breach of Contract Claim (Count IV)**

Notably, Six Dimensions misleads this Court by stating that Brading "attempts to persuade this court to find differently than every other California court" by holding an employee non-solicit unenforceable "for the first time." Pl.'s Br. at 7.[2] Brading offered three California

---

[1] Brading, as must this Court, disregards Six Dimensions' arguments about and references to material outside the complaint. A district court's ruling will be vacated if it "consider[s] affidavits and exhibits" or "factual allegations contained in legal briefs or memoranda," and even if it "simply 'mak[es] a connection not established by the complaint alone' or contains an 'unexplained reference' that 'raises the possibility that it improperly relied on matters outside the pleading." *Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000).

[2] The parties agree California law applies to the breach of contract claim. While Six Dimensions' choice-of-law discussion appears, at first blush, to be a startling about-face from its own allegation that California applies (SAC ¶ 23), we read Plaintiff's position to be limited to the proposition that if Brading consents to California for the breach of contract claim, she should not then be permitted to argue that the California Unfair Competition Law ("UCL") does not apply in Count II because either California or New York law should apply "universally." Plaintiff misunderstands Brading's argument about the UCL. Brading does not argue California law does not apply to Six Dimensions' unfair competition claim. Brading *does apply* California law (not once citing New York law), and California law states that the UCL will not apply unless the purportedly unfair conduct or its resulting injury occurred inside California. Moreover, Six Dimensions conflates this standard—when the UCL will apply—with the standard for when a

court decisions that have discussed the unenforceability of an employee non-solicit, two which held them unlawful and one which, under a TRO analysis, assumed it would be held unlawful. Def.'s Br. at 7-8.  Each was correctly persuaded by the breadth of the California Supreme Court's decision in *Edwards* holding that California's public policy "in favor of open competition and employee mobility" and the "unambiguous" statutory language of § 16600 meant that "any" restraint, even if it is not "unreasonable or overbroad," is unenforceable and that this policy and statute "should not be diluted by judicial fiat." *Edwards v. Arthur Andersen LLP*, 44 Cal.4th 937, 946-950 (Sup. Ct. 2008).  Brading is not asking for an "expansion" of controlling law, but an application of it.

In contrast, Six Dimensions cites to two post-*Edwards* decisions that, inexplicably, chose to follow the 1985 lower court decision in *Loral* that enforced employee non-solicits because they did not pose a "significant restraint" on competition.   Pl.'s Br. at 8-9 (relying on *Arthur J.*

---

contractual choice-of-law will apply.  A contractual choice-of-law applies so long as there is some relationship to the parties (here, as Six Dimensions notes, the connection is that it was a California corporation); the UCL requires more and will apply only if the "unfair" conduct underlying the UCL claim or its injury occurred *in* California (which Six Dimensions has not alleged).  Accordingly, as Brading explained in her moving papers, the existence of an enforceable California choice-of-law provision does not necessarily correlate with applicability of a UCL claim.  *See also infra* section V (UCL claim).

To the extent this Court construes Six Dimensions' as going further and urging the application of New York law to its breach of contract claim, such request is wholly inequitable and must be rejected. Six Dimensions concedes there is a relationship between California and the parties—*see* Pl.'s Br. at 12, SAC ¶ 2—that supports the enforceability of the choice-of-law provision, and, in fact, Six Dimensions nowhere states that it is unenforceable.  Furthermore, Six Dimensions drafted the California choice-of-law provision and has consented to the application of California law by maintaining that position to date.  It would be in bad faith and prejudicial to Brading to permit Six Dimensions to now reverse its position merely because it belatedly realizes New York law may be more beneficial to its economic interests.  *See*, *e.g.*, *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 323 (S.D.N.Y. 2014) (collecting cases for proposition that "conduct during litigation may indicate assent to the application of another state's law."); *see also*, *e.g.*, *In re WorldCom, Inc.*, No. 02-13533 (AJG), 2006 WL 544471, at *7 (Bankr. S.D.N.Y. Jan. 30, 2006) ("If the parties' pleadings assume that the law of a particular state governs the dispute, 'such implied consent . . . is sufficient to establish choice of law.'" (quoting *IBM v. Liberty Mut. Fire Ins. Co.,* 303 F.3d 419, 423 (2d Cir. 2002)).

*Gallagher & Co.* and *Thomas Weisel Partners*).  This express rationale—that a non-solicit restraint is valid because it is not a "significant restraint"—cannot be reconciled with nor countenanced after the *Edwards* court flatly rejected the "narrow restraint" and "rule of reasonableness" line of exceptions to § 16600, finding such court-made exceptions would be "dilut[ing] by judicial fiat" the legislature's decision to outlaw "any" restraint on competition. Neither of the cases cited by Six Dimensions attempts to reconcile *Loral* with *Edwards* or justify a blind adherence to *Loral* after the Supreme Court's crystal-clear guidance in *Edwards* and should not be followed.

Even if this Court were to follow the renounced "narrow restraint" line of cases and rule that employee non-solicits are valid under California law, Brading's particular non-solicit is void because it contains unenforceable "no-hire" language.  Six Dimensions concedes the "no-hire" language is unenforceable but encourages this Court to invalidate only that phrase and leave standing the remainder of Brading's non-solicit.  Blue-penciling of restrictive covenants like a non-solicit, though, is impermissible because it "undermine[s]" section 16600's "statutory policy favoring competition," offering employers "no disincentive" to use overly broad and illegal clauses "if permitted to retreat to narrow, lawful construction in the event of litigation." *Kolani v. Gluska*, 64 Cal. App. 4th 402, 407 (App. 2 Div. 1998); *see also* Def.'s Br. at n.6, n.9 (blue-penciling discussion).

Six Dimensions relies on two cases to urge this Court to blue-pencil Brading's restrictive covenant.  Six Dimensions misstates the holding of the first, *Latona v. Aetna*, 82 F. Supp. 2d 1089 (C.D. Cal. 1999).  Pl.'s Br. at 9.  *Latona* supports Brading's position rather than Six Dimensions': the court *rejected* blue-penciling, stating that "the Court must follow *Kolani*'s instruction" described above and invalidated an entire contract based on an unenforceable

non-solicit.[3] *Id.* at 1097-98. The second, *Thomas Weisel Partners LLC v. BNP Paribas*, No. C 07-6198, 2010 WL 546497 (N.D. Cal. Feb. 10, 2010), is unpersuasive here because the court noted the deterrence concerns of *Kolani* were not present because, at the time, the employer's "no-hire" language was "not clearly violative of California law." *Id.* at *7. In contrast, here, Six Dimensions had the benefit of legal precedents clearly establishing such no-hire language as unlawful and Six Dimensions should not be incentivized to draft and impose overly broad clauses that unlawfully chill competition and employee mobility. Thus, Brading's employee non-solicit provision should be voided in its entirety because of the unlawful no-hire language.[4]

## II. Plaintiff Cannot State a Tortious Interference with Contract Claim (Count I)

Six Dimensions does not address any of the authorities cited by Brading that warrant dismissal of its tortious interference with contract claim for failure to adequately plead. Rather, Six Dimensions employs the same strategy that it used in its deficient Second Amended Complaint: repetitive, sometimes irrelevant, conclusory and ambiguous allegations. The allegations are so deficient that now, more than ever, it is difficult to tell what "contract" Plaintiff claims was tortuously interfered with—Brading's, by Perficient, or Six Dimensions' employees, by Brading and/or Perficient? The only discernible points it makes as to Brading are:

- "Brading provided Gomez . . . with confidential information she obtained . . .including the identities, experience, and contact information of specific employees of Plaintiff.

---

[3] In any event, Brading does not request her entire *contract* be deemed void, only the non-solicit *provision* within it, which contains unlawful no-hire language in the same sentence as the other challenged non-solicitation language.

[4] Plaintiff at times in its opposition relies on the "Termination Certification," which was signed as Brading departed Six Dimensions. Def.'s Br. Exh. 1 at 7. This certification does contains different non-solicit language (and a different confidentiality clause) than Brading's employment agreement but these differences have no consequence as this certification was not supported by any consideration and is not a valid contract. Indeed, as even Plaintiff characterized it in its Complaint, that certificate was intended for "reiterating" and reminding Brading of the obligations she had earlier signed in her employment agreement, not to impose any new obligations. SAC ¶ 90.

- "There is sufficient information in the facts to support the allegation that defendants knew of the . . . contracts between the solicited employees and Plaintiff."
- "Both Defendants were aware that the solicitation and recruitment of employees violated the contracts between the employees and Plaintiff."

Pl.'s Br. at 16-17.  None of these assertions says anything of import.  As stated in Brading's moving papers, Plaintiff's naked assertions about unidentified contracts and unspecific implied breaches do not give rise to a plausible claim here.  *See* Def.'s Br. at 14-15.  Plaintiff has not alleged the existence of language in *any* agreement with any of its employees that prohibit them from being solicited by anyone, nor could such provision be lawful under California law.

### III.     Plaintiff Concedes its Theft of Trade Secrets Claim Fails (Count VI)

Through omission, Six Dimensions ostensibly concedes that Count VI, for common law misappropriation of trade secrets is preempted by California's Uniform Trade Secrets Act ("CUTSA"). *Compare* Def.'s Br. at 15-16 *with* Pl.'s Br. at 18-19.

### IV.     Plaintiff Cannot State a CUTSA Claim (Count VII)

Six Dimensions' CUTSA claim against Brading fails for three reasons, as discussed in its moving brief:  1) Plaintiff has failed to adequately plead trade secrets with sufficient particularity under pleading standards; 2) Plaintiff cannot satisfy the elements of a CUTSA claim because it has not alleged the first element, a protectable trade secret; 3) Plaintiff cannot satisfy the elements of a CUTSA claim because it has not alleged the third element, that the purported "trade secrets" were disclosed to Brading under circumstances that would give rise to an obligation for her not to share them.  *See* Def.'s Br. at 16 (elements of claim).

Plaintiff offers no rebuttal to Brading's first argument that it has not pled trade secrets with sufficient particularity.

As to Brading's second argument, Plaintiff claims it has alleged a protectable trade secret by alleging Brading shared the "identity of plaintiff's customers." Pl.'s Br. at 18 (citing SAC ¶ 119). In fact, this is not what Plaintiff pled—Plaintiff pled more vaguely that Plaintiff "shar[ed] trade secrets relating to Plaintiff's customers." SAC ¶119. This utterly fails to meet the pleading standards for trade secrets. Because new claims in memoranda of law cannot be considered on a motion to dismiss, this Court cannot consider whether "identities" of customers are a trade secret. Moreover, by law, the "identity of plaintiff's customers," without more, is *not per se* a trade secret. Tellingly, Plaintiff does not cite to any law that they are. *See*, *e.g.*, Def.'s Br. at 17 (defining trade secret); *Pyro Spectaculars N., Inc. v. Souza*, 861 F. Supp. 2d 1079, 1088 (E.D. Cal. 2012) (explaining circumstances under which courts will deem a customer list to be a trade secret, for example, "courts are reluctant to protect customer lists to the extent they embody information which is readily ascertainable through public sources, such as business directories").

Additionally, by its silence, Six Dimensions' presumably agrees with Brading's position that the "identities, contact information, and qualifications of [Brading's] former co-workers" as alleged and as opposed to Plaintiff's customers, is *not* a protectable trade secret. *See* Def.'s Br. at 17-18. In other words, Plaintiff failed to allege a protectable trade secret, an essential element of its CUTSA claim.

Six Dimensions also fails to satisfy the third element of a CUTSA claim, that the trade secret was shared with Brading under circumstances giving rise to an obligation not to disclose it. To satisfy this element, Six Dimensions falsely claims that Brading "pledged not to share but did anyway" the "identities, contact information, and qualifications of her former co-workers." Pl.'s Br. at 18. In fact, an examination of the confidentiality clause of Brading's agreement reveals that it contains no language whatsoever prohibiting her from sharing employee identities and contacts. Def.'s Br. Exh. 1 ¶ 4(a). Additionally, both the employee information and

purported "trade secrets relating to customers" alleged in the Second Amended Complaint could well be information publicly and widely known (and is, such as in LinkedIn profiles) since Six Dimensions fails to present any allegations that would suggest otherwise. Because "publicly and widely known information and made generally available" is expressly excluded from Brading's confidentiality clause, Def.'s Br. Exh. 1 ¶ 4(a), Six Dimensions has not plead, above a speculative level, the third element of its CUTSA claim.

### V.      Plaintiff Cannot State a UCL Claim (Count II)

First and foremost, Plaintiff's UCL claim under § 17200 fails because the UCL does not apply extraterritorially. Six Dimensions tries to save its UCL claim by noting the California choice-of-law agreement and that Plaintiff was a California corporation in 2014. Pl.'s Br. at 12. These two undisputed points are meaningless. Six Dimensions conveniently ignores the case law cited by Brading expressly rejecting the argument that a choice-of-law could trump extraterritoriality limits contained in California law itself. *See O'Connor v. Uber Techs.*, *Inc.*, 58 F. Supp. 3d 389, 1004 (N.D. Cal. 2014) (cited in Def.'s Br. at 20). Additionally, the mere fact that Plaintiff was formerly incorporated in California,[5] on its face, is a far cry from having alleged that the alleged misconduct or its resulting injury occurred in California—the standard required for the UCLA to apply. *See* Def.'s Br. at 19 (discussing no extraterritorial application).

Nevertheless, assuming, *arguendo*, that UCL applies, which it does not, Six Dimensions is also incorrect that it has adequately pled the elements of a UCL claim. Without any legal support, Six Dimensions asserts that solicitation of employees is an "unfair practice" cognizable under the UCL. Pl.'s Br. at 12. This is plainly not true. As the *Softchoice* court stated: "The hiring of experienced employees from a competitor is not an unfair business practice, without

---

[5] Plaintiff also makes other allegations that are not within the Complaint, such as that one solicited employee resides in California, and cannot be considered on this motion.

more." *Softchoice Corp. v. En Pointe Techs., Inc.*, No. SC088295, 2006 WL 3350798, at *2 (Cal. Super. Ct. Nov. 13, 2006). While Six Dimensions (wrongly) believes that *Softchoice* is distinguishable because there was only evidence of one-time employee poaching, the court nowhere limited its holding to that fact.[6] If any numbers matter in the *Softchoice* ruling, it is the number of employers who were approached—in *Softchoice,* it was one company, just as here it is solely Six Dimensions. The court reasoned that since the solicitation harmed only the plaintiff, it did not threaten "*competition* but only a single *competitor*" and was not unfair competition under § 17200. *Id.* (emphasis in original). The import of *Softchoice* is the same as the other cases (including the legal standards cited by Plaintiff) that define unfair competition as something of great significance, behavior that offends an established public policy or is immoral, unethical, oppressive, unscrupulous. *See* Def.'s Br. at 20 n.13 (citing case law). The UCL is not, however, "an all-purpose substitute for a tort or contract action," *Yanting Zhang v. Superior Court*, 57 Cal. 4th 364 (Sup. Ct. 2013), and Plaintiff's Second Amended Complaint fails to allege any behavior that could be elevated to more than a simple breach of contract (and, even on that score, it fails).

## VI. Plaintiff Cannot State a Tortious Interference with Prospective Economic Advantage Claim (Count III)

Six Dimensions and Brading agree that this tort requires an "independently wrongful" act by a defendant and that unfair competition in violation of the UCL could constitute that independent wrong. Because Six Dimensions agrees this claim is dependent on the survival of its UCL claim, and the UCL claim must be dismissed for the reasons discussed above, Plaintiff's Count III for tortious interference with prospective economic advantage must also be dismissed with prejudice.

---

[6] Indeed, elsewhere, the court describes the aggrieved conduct as plural: "actions . . . to lure Softchoice *employees* . . . to recruit Softchoice sales *reps* to work for" the defendant. *Id*. at *1 (emphasis added).

## VII. Plaintiff Should Be Denied Leave to Amend

In her moving papers, Brading argued that Six Dimensions should not be given leave to amend given that it has availed itself of three opportunities to draft a viable complaint. Def.'s Br. at 23. Six Dimensions does not disagree. It does not suggest it is entitled to leave to amend, does not request such leave, and does not demonstrate how such leave would be effective. Granting leave to amend *sua sponte* under these circumstances would reward Plaintiff's haphazard litigation approach with a roadmap for drafting new allegations, at the expense of the efforts of opposing counsel and this Court. This Court should feel comfortable dismissing the Complaint with prejudice. *See Gallop v. Cheney*, 642 F.3d 364, 369-70 (2d Cir. 2011) ("While leave to amend . . . is 'freely granted' . . . no court can be said to have erred in failing to grant a request that was not made" and a plaintiff is "not necessarily entitled" to replead when it "fail[s] . . . to make a showing that the complaint's defects can be cured.").

## VIII. Brading Joins Perficient's Reply for Improper Venue and Forum *Non Conveniens*

To the extent any of Six Dimensions' claims are not dismissed, Brading joins in and incorporates defendant Perficient, Inc.'s reply brief further supporting dismissal for improper venue or, alternatively, transfer for forum *non conveniens*. Six Dimension continues to rely on the notion that it felt the "repercussions" of Brading's actions in New York, and therefore venue here is proper. Pl's. Br. at 24. But courts have already rejected the proposition that the site of economic injury is alone sufficient for venue. *Astor Holdings, Inc. v. Roski*, 2002 WL 72936 (S.D.N.Y. Jan. 17, 2002). Since none of Plaintiff's allegations adequately suggest that the "events or omissions giving rise to" Plaintiff's claims against Brading occurred in New York, venue fails and dismissal is required.

Even assuming, *arguendo*, that venue is proper here, this Court should transfer venue for forum *non conveniens* as discussed in Brading's and Perficient's moving papers.

Dated: June 6, 2016            FORD HARRISON LLP
       New York, New York

By:    /s/ Philip K. Davidoff
        Philip K. Davidoff
        Roshni Chaudhari
*Attorneys for Defendant*
100 Park Avenue, Suite 2500
New York, NY  10017
Tel:  (212) 453-5900
Fax: (212) 453-5959