```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/28/17
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SIX DIMENSIONS, INC.,

                        Plaintiff,

        - against -

PERFICIENT, INC. and LYNN M.
BRADING,

                        Defendants.

**ORDER**

15 Civ. 8309 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

       In this action, Plaintiff Six Dimensions, Inc. brings claims for breach of contract, unfair competition, tortious interference with contract and prospective economic advantage, and misappropriation of trade secrets against its former employee, Lynn M. Brading, and her current employer, Perficient, Inc.  Six Dimensions claims that Defendants are recruiting its employees in violation of Brading's non-solicitation agreement with Six Dimensions, and using Six Dimensions' trade secrets to solicit both Six Dimensions' employees and its clients.

       Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(3) for improper venue, and Rule 12(b)(6) for failure to state a claim.  (Dkt. Nos. 82, 90)  For the reasons stated below, Defendants' Rule 12(b)(3) motion will be granted.

## BACKGROUND

       Plaintiff Six Dimensions is a Nevada corporation with its principal place of business in Manhattan.  (Second Am. Cmplt. ("SAC") (Dkt. No. 49) ¶¶ 1)  Six Dimensions offers "Adobe training, servicing, and licens[ing]."  (Id. ¶ 17)  In August 2014, Six Dimensions hired Brading, an Ohio resident, as a "Manager of Channel Partner Relations."  In this position, Brading was responsible for Six Dimensions' "partnership" with Adobe Systems.  (Id. ¶¶ 8, 17)

In performing her duties, Brading traveled both overseas and to a variety of cities across the United States, including New York City. (Id. ¶¶ 17, 20, 22, 34)  Brading also had regular contact with Six Dimensions management in Manhattan. (Id. ¶¶ 16, 19)

When Brading was hired by Six Dimensions in August 2014, she entered into an employment agreement with the company (the "Employment Agreement"). (Id. ¶ 88; Chaudhari Decl. (Dkt. No. 91), Ex. 1 (Employment Agreement))  The Employment Agreement prohibits Brading – for two years "after the termination of [her] [r]elationship [with the company]" – from "directly or indirectly, solicit[ing], recruit[ing][,] or hir[ing]" any Six Dimensions employee, and from "directly or indirectly, solicit[ing], entic[ing], or induc[ing] any Customer or Supplier . . . of the Company to become a Customer or Supplier of any other person or entity engaged in any activity competitive with the Company . . . , or to cease doing business or reduce its business with the Company. . . ."  Brading also agreed not to "assist any person or entity in [soliciting a Six Dimensions customer or supplier]." (Id. ¶ 8(a)-(b))  The Employment Agreement contains a choice of law provision providing for the application of California law. (Id. ¶ 10(a))

Brading resigned from her position at Six Dimensions on June 18, 2015. (SAC (Dkt. No. 49) ¶¶ 25, 90)  She "then became the Adobe Alliance Manager for Plaintiff's competitor, [Defendant] Perficient, Inc." (Id. ¶ 26)

Six Dimensions alleges that before the two year term of Brading's non-solicitation provision expired, she and Jeanette Gomez – Perficient's then-Director of Recruiting in its Texas office – induced several of Brading's former co-workers to terminate their contracts with Six Dimensions. (Id. ¶¶ 10-13, 28, 32, 36, 39, 43, 48, 54, 58, 92-94, 99)  Six Dimensions further alleges that Brading shared Six Dimensions' confidential information with Gomez – "including the identities, experience and contact information of [Plaintiff's employees]" – and

2

that Gomez joined in Brading's solicitation of Six Dimensions' employees, even though she was aware of Brading's non-solicitation agreement. (Id. ¶¶ 29-31, 36, 39, 91, 98) Finally, Six Dimensions accuses Defendants of using its trade secrets to solicit Plaintiff's customers, including Medtronics. (Id. ¶¶ 108-113, 120)

## PROCEDURAL HISTORY

The Complaint in this case was filed on October 21, 2015, and named only Brading as a defendant. (Cmplt. (Dkt. No. 1)) On October 27, 2015, Plaintiff filed a motion for a temporary restraining order and a preliminary injunction, and this Court issued an order to show cause why Plaintiff's application for a temporary restraining order and a preliminary injunction should not be granted. (Dkt. No. 10) On November 4, 2015, Brading submitted a letter stating that she "does not object to the entry of the preliminary injunction proposed by Plaintiff in the Order to Show Cause." (Brading Ltr. (Dkt. No. 15) at 1[1]) Accordingly, on November 5, 2016, this Court entered a preliminary injunction enjoining Brading from "directly or indirectly soliciting . . . Plaintiff's employees or consultants . . . and from utilizing, sharing or disclosing any confidential information she obtained while employed by Plaintiff." (Nov. 5, 2016 order (Dkt. No. 17))

On November 27, 2015, Plaintiff filed the Amended Complaint, which adds Perficient as a defendant (Dkt. No. 29), and on December 21, 2015, Plaintiff filed the Second Amended Complaint. (Dkt. No. 49) Pending before the Court are Defendants motions to dismiss the SAC for improper venue and for failure to state a claim. (Dkt. Nos. 82, 90)

---

[1] The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Filing system.

## DISCUSSION

## I.    LEGAL STANDARD

Title 28, United States Code, Section 1391(b)(2) provides that venue is proper in

a judicial district in which a substantial part of the events or omissions giving rise
to the claim occurred, or a substantial part of property that is the subject of the
action is situated . . . .

28 U.S.C. § 1391(b)(2).  "Section 1391(b)(2) does not restrict venue to the district in which the

'most substantial' events or omissions giving rise to a claim occurred[;] [r]ather, . . . § 1391(b)(2)

'contemplates that venue can be appropriate in more than one district' and 'permits venue in

multiple judicial districts as long as a "substantial part" of the underlying events took place in

those districts.'"  Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 432 (2d Cir. 2005)

(quoting Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 356 (2d Cir. 2005)) (citations omitted).

The Second Circuit has "caution[ed] district courts to take seriously the adjective

'substantial,'" however, and to "construe the venue statute strictly."  Glasbrenner, 417 F.3d at

357 (citing Olberding v. Ill. Cent. R.R., 346 U.S. 338, 340 (1953)).  "'Substantiality' for venue

purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall

nature of the plaintiff's claims and the nature of the specific events or omissions in the forum,

and not by simply adding up the number of contacts."  Daniel, 428 F.3d at 432-33 (citing

Glasbrenner, 417 F.3d at 357; Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 295-96

(3d Cir. 1994)).  "When material acts or omissions within the forum bear a close nexus to the

claims, they are properly deemed 'significant' and, thus, substantial, but when a close nexus is

lacking, so too is the substantiality necessary to support venue."  Id. at 433 (citing Jenkins Brick

Co. v. Bremer, 321 F.3d 1366, 1372 (11th Cir. 2003)).  In particular, the focus is on "the relevant

activities of the defendant, not the plaintiff," because "'the purpose of statutorily defined venue

is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient

4

place of trial.'" Micromem Techs., Inc. v. Dreifus Assocs. Ltd., No. 14-CV-9145 (LAK), 2015 WL 8375190, at *4 (S.D.N.Y. Dec. 8, 2015) (quoting Daniel, 428 F.3d at 432) (citations omitted).

Accordingly, "when a plaintiff relies on § 1391(b)(2) to defeat a venue challenge, a two-part inquiry is appropriate.  First, a court should identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims.  Second, the court should determine whether a substantial part of those acts or omissions occurred in the district where suit was filed, that is, whether 'significant events or omissions material to [those] claim[s] . . . have occurred in the district in question.'" Daniel, 428 F.3d at 432 (quoting Glasbrenner, 417 F.3d at 357) (citations omitted).

"Courts may consider materials outside the pleadings when deciding a motion to dismiss for improper venue under Rule 12(b)(3) . . . ." Brennen v. Phyto-Riker Pharm., Ltd., No. 01 CIV. 11815(DLC), 2002 WL 1349742, at *1 n.2 (S.D.N.Y. June 20, 2002) (citing New Moon Shipping Co., Ltd. v. Man B & W Diesel AG, 121 F.3d 24, 26 (2d Cir. 1997)).  "The Court 'must take all allegations in the complaint as true, unless contradicted by the defendants' affidavits.'" Rankel v. Kabateck, No. 12 CV 216 VB, 2013 WL 7161687, at *2 (S.D.N.Y. Dec. 9, 2013) (quoting U.S. E.P.A. ex rel. McKeown v. Port Auth. of N.Y. & N.J., 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001)).  "Upon a motion to dismiss under Rule 12(b)(3) the Plaintiff has the burden of pleading venue." Pers. v. Google Inc., 456 F. Supp. 2d 488, 493 (S.D.N.Y. 2006).  Where, as here, neither side has requested an evidentiary hearing, a court may "'rely on pleadings and affidavits, [and] the plaintiff need only make a prima facie showing of [venue].'" Glasbrenner, 417 F.3d at 355 (2d Cir. 2005) (citations omitted).

## II.    ANALYSIS

### A.    Venue under Section 1391(b)(2)

Six Dimensions asserts that venue is proper in this District under 28 U.S.C.

§ 1391(b)(2) because (1) Defendants' conduct has caused injury to Plaintiff in New York; (2)

while Brading was employed by Plaintiff, she travelled to New York to meet with Company

executives and to solicit customers, and "regularly communicated with Plaintiff's management in

their office in New York"; (3) Defendant Perficient has an office in New York, and the Six

Dimensions employees Defendants "solicited away from the Plaintiff regularly serviced clients

in New York"; and (4) the trade secrets Defendants allegedly misappropriated "were the property

of New York based Six Dimensions." (Pltf. Opp. (Dkt. No. 87) at 28-31)

### 1.    Breach of Contract Claim

Six Dimensions alleges that Brading breached the non-solicitation clause in the

Employment Agreement by recruiting Six Dimensions' employees and assisting Perficient in

doing the same. (SAC (Dkt. No. 49) ¶¶ 88-93) Plaintiff further contends that venue is proper in

this District for its breach of contract claim because Brading "regularly visit[ed] the State of New

York in order to effectuate her responsibilities," "communicate[d] regularly with Plaintiff's

management in New York," and "regularly solicited from customers located in the State of New

York." (SAC (Dkt. No. 49) ¶¶ 16, 18, 19, 34; Pltf. Opp. (Dkt. No. 87) at 28) Defendants argue

that none of these activities provide a basis for venue, because there is no factual nexus between

these activities and Plaintiff's breach claim. (Perficient Br. (Dkt. No. 83) at 9-10)

"'[T]he elements of a cause of action for breach of contract are (1) the existence

of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach,

and (4) the resulting damages to the plaintiff.'" Sunbelt Rentals, Inc. v. Victor, No. C 13-4240

SBA, 2014 WL 492364, at *8 (N.D. Cal. Feb. 5, 2014) (quoting <u>Oasis West Realty, LLC v.</u> <u>Goldman</u>, 250 P.3d 1115, 1121 (Cal. 2001)).[2]

"Courts making venue determinations in contract disputes have looked to such factors as where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." <u>Glasbrenner</u>, 417 F.3d at 357 (internal quotation marks omitted) (citations omitted). Where a defendant is accused of breaching an employment agreement, and where the breach arises out of some defect in the employee's service to his employer, the employee's repeated physical presence and receipt of payment in the District may constitute "substantiality." <u>See, e.g.</u>, <u>Corning Data Servs., Inc. v. Kermick</u>, No. 07-CV-6201, 2007 WL 2080917, at *1, *4 (W.D.N.Y. July 18, 2007) (where defendant employee was accused of breaching his duty of loyalty by simultaneously working for plaintiff's competitor, venue found proper in district where he "received paychecks, work assignments, . . . [and] travel plans," and was supervised); <u>Schomann Int'l Corp. v. N. Wireless, Ltd.</u>, 35 F. Supp. 2d 205, 207, 213 (N.D.N.Y. 1999) (where defendant was alleged to have breached a consulting contract by performing unsatisfactory work, venue proper in Northern District of New York because "purchase orders and payment requests were forwarded to [p]laintiff's New York office, . . . payment was made from [plaintiff's] New York office . . . , [plaintiff] regularly supervised Defendants' performance under the Agreement [from the Northern District of New York,] and [plaintiff] requested that periodic status reports be sent by [d]efendants to [plaintiff's] New York office").

---

[2] In accordance with the governing law provision of the Employment Agreement, the parties agree that California law applies to Plaintiff's breach of contract claim. (<u>See</u> SAC (Dkt. No. 49) ¶ 23; Chaudhari Decl. (Dkt. No. 91) ¶ 10(a); Pltf. Opp. (Dkt. No. 87) at 13; Brading Reply (Dkt. No. 93) at 2 n.2).

Where a breach of contract claim based on an employment agreement arises from a defendant's post-employment conduct, however – such as "breaches of a non-compete and non-disclosure agreement" – venue is proper where the defendant took the wrongful actions, regardless of where the victim of the breach resides. TSIG Consulting Inc. v. ACP Consulting LLC, No. 14 CIV. 2032 SHS, 2014 WL 1386639, at *1, *3 (S.D.N.Y. Apr. 9, 2014) (breach of contract claim based on non-compete and non-disclosure provisions in employment agreement with New York plaintiff; rejecting plaintiff's argument that venue in New York was proper based on injury to New York plaintiff and defendant's "'regular[] travel[] to New York to attend meetings and service Plaintiff's New York based clients'" (citation omitted)); Insight Data Corp. v. First Bank Sys., Inc., No. 97 CIV. 4896 (MBM), 1998 WL 146689, at *3 (S.D.N.Y. Mar. 25, 1998) ("[I]f [former employee] breached the non-disclosure or non-competition[] [provisions] of the employment agreement, that breach occurred in the course of [the former employee's] employment at [the competitor's] offices . . . , not in [the district where the former employer is based]."); see also Open Sols. Imaging Sys., Inc. v. Horn, No. 3:03 CV 2077 JBA, 2004 WL 1683158, at *2, *6 (D. Conn. July 27, 2004) (venue not proper in Connecticut where Texas defendant – when employed by plaintiff – attended quarterly meetings in Connecticut; events giving rise to alleged breach of non-compete and confidentiality agreement occurred or would occur in Texas).

Here, Plaintiff's breach of contract claim is based on Brading's alleged violation of the non-solicitation clause in the Employment Agreement, and the acts giving rise to this claim are Brading's alleged solicitation of Six Dimensions' employees. (See SAC (Dkt. No. 49) ¶¶ 88-93); TSIG Consulting, 2014 WL 1386639, at *1, *3 ("employees' breaches of a non-compete and nondisclosure agreement . . . occurred in [states] [] where they organized

[competing company], perform[ed] work for the [solicited client], and presumably conduct[ed] the day-to-day operations of their new business"). Even assuming that venue in a breach of contract action can also be premised on "the place where a contract was negotiated, signed, or performed," <u>TSIG Consulting</u>, 2014 WL 1386639, at *3, <u>but see</u> <u>Kermick</u>, 2007 WL 2080917, at *4 ("[defendant]'s signing of his employment contract does not classify as an activity giving rise to the [breach of contract] claim"), there is no evidence that the Employment Agreement was negotiated or signed in New York. To the contrary, there is evidence that Brading signed the Employment Agreement in Ohio. (<u>See</u> Chaudhari Decl. (Dkt. No. 91), Ex. 1 at 7) While the SAC alleges that, during Brading's employment at Six Dimensions, she "regularly visit[ed] the State of New York," and "communicate[d] regularly with Plaintiff's management in New York" (SAC (Dkt. No. 49) ¶¶ 18-19), these allegations are not material to Plaintiff's breach claim, because that claim is premised on allegations that Brading – after leaving Plaintiff's employ – solicited, or assisted Perficient in soliciting, Six Dimensions employees in Ohio, California, Colorado, and Canada. (<u>See</u> <u>id.</u> ¶¶ 55, 92-93; Pltf. Supp. Initial Disclosures (Dkt. No. 58-1) at 2-4) Given that Plaintiff's breach claim is based on allegations that Brading solicited Six Dimensions employees located outside of New York, the claim lacks a close factual nexus with New York. <u>See</u> <u>Daniels</u>, 428 F.3d at 433.

      <u>Kermick</u> and <u>Schomann</u> – cited by Plaintiff (Pltf. Opp. (Dkt. No. 87) at 28) – are not to the contrary. In <u>Kermick</u>, the defendant employee had worked simultaneously for his employer Corning and his employer's competitor, thus violating his duty of loyalty to Corning. <u>Kermick</u>, 2007 WL 2080917, at *1. Corning sued Kermick for "lost profits, restitution of salary, expense reimbursements and [the] cost of [his] use of company assets and equipment," because while Kermick was supposed to be working for Corning, he was actually working for the

competitor.  Id.  When Kermick challenged venue, the court found venue proper, because while Kermick was working for Corning's competitor, he was also being supervised and paid by Corning from within the district.  Id. at *4.  Given that the essence of the claim in Kermick was that Kermick was simultaneously working for Corning and Corning's competitor, the defendant's contacts with Corning in the forum were material to the claim against him.  Here, of course, there is no claim that Brading was simultaneously working for Six Dimensions and Perficient.

In Schomann, an Iowan defendant was doing engineering work in the Republic of Georgia for the New York plaintiff.  Schomann, 35 F. Supp. 2d at 207.  Plaintiff alleged that defendant breached the parties' consulting services agreement by not completing work on a timely basis and by providing insufficient or incorrect information about the project to plaintiff in New York.  Id.  The Schomann court found that venue was proper in New York because – during the time defendant was allegedly breaching the consulting agreement – he was communicating with, being paid by, and sending purchase orders and payment requests to plaintiff in New York.  Id. at 213.  Here, of course, Brading was not communicating with, being paid by, or sending invoices to Six Dimensions at the time she allegedly breached the non-solicitation provisions in the Employment Agreement.

In sum, Plaintiff's breach claim is based on conduct Brading allegedly committed after her employment with Six Dimensions had ended.  Moreover, the contacts with New York pled in the SAC are entirely unrelated to Brading's alleged breach.  Because none of the material acts supporting the breach of contract claim took place in this District, venue for this claim is not proper in this District.

### 2.    <u>Tortious Interference and Unfair Competition Claims</u>

Six Dimensions alleges that – in recruiting its employees – Defendants tortiously interfered with Plaintiff's contracts and non-compete agreements with its employees.  (SAC (Dkt. No. 49) ¶¶ 43-58, 98-101)  Plaintiff also contends that Defendants' conduct violates California's Unfair Competition Law ("UCL") and constitutes tortious interference with prospective economic advantage, because Plaintiff can no longer benefit from the service of the employees recruited by Defendants.  (Id. ¶¶ 64-70, 73-81)  As to venue, Plaintiff argues that venue is proper in this District because its principal place of business is in Manhattan and it suffered injury here.  (Pltf. Opp. (Dkt. No. 87) at 30)  Defendants contend, however, that none of the alleged torts took place in this District, and that Plaintiff's allegation that it suffered injury here is not sufficient to demonstrate proper venue.  (Perficient Br. (Dkt. No. 83) at 9-10, 12; Perficient Reply (Dkt. No. 84) at 3)

To state a claim for tortious interference with prospective economic advantage under New York law,[3] "four conditions must be met:  (1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted

---

[3]  In the SAC, Six Dimensions alleges – without explanation – that California law applies to its tort claims against Brading. In its opposition to Defendants' venue motion, however, Six Dimensions suggests that New York law may apply, and argues that, in any event, its tort claims survive under either New York or California law. (Pltf. Opp. (Dkt. No. 87) at 13)  Given that – with the possible exception of one solicited employee – Plaintiff's tort claims have no apparent connection with California, it is not clear why California common law (or the UCL) would apply. In any event, because the elements of the torts at issue are essentially the same under both states' law, and because Six Dimensions does not appear to object to the application of New York law to its tort claims, (see Pltf. Opp. (Dkt. No. 87) at 19-21 (listing elements of tortious interference with prospective economic advantage under both New York and California law)), this Court will apply New York law. See Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 143 (2d Cir. 2004) ("Choice of law does not matter . . . unless the laws of the competing jurisdictions are actually in conflict. . . .  In the absence of substantive difference, however, a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it." (citations omitted)).

for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." Catskill Dev., L.L.C. v. Park Place Entm't Corp., 547 F.3d 115, 132 (2d Cir. 2008) (citations omitted).

"'To maintain a successful cause of action for tortious interference with contract under New York law, a plaintiff must allege and prove the existence of a valid contract and damages caused by the defendant's knowing and intentional interference with that contract without reasonable justification.'" Int'l Minerals & Res., S.A. v. Pappas, 96 F.3d 586, 595 (2d Cir. 1996) (citations omitted).

California's UCL broadly prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200; see also Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 973 P.2d 527, 539 (Cal. 1999) ("In contrast to its limited remedies, the unfair competition law's scope is broad."); Barquis v. Merchants Collection Assn., 496 P.2d 817, 830 (Cal. 1972) ("[G]iven the creative nature of the scheming mind, the Legislature evidently concluded that a less inclusive standard would not be adequate.").

In cases raising claims of tortious interference and unfair competition, venue is generally premised on where the wrongful conduct took place, as opposed to where the economic loss caused by the misconduct was felt. See TSIG Consulting Inc., 2014 WL 1386639, at *3 (where defendants – former employees who worked remotely from Georgia and Tennessee for New York plaintiff – were accused of "breach of contract, breach of fiduciary duties, and unfair business practices" because of "alleged competition with [plaintiff] . . . and their solicitation of the University of New Mexico as a client," "defendants' allegedly wrongful acts occurred in Georgia, New Mexico, and Tennessee – where they organized [their business], perform work for the University of New Mexico, and presumably conduct the day-to-day

operations of their new business"); PowerDsine, Inc. v. Broadcom Corp., No.

07CV2490(SJF)(WDW), 2008 WL 268808, at *1-*2, *6 (E.D.N.Y. Jan. 29, 2008) (venue not

proper in New York for tortious interference with contract claim based on actions by California

defendant to recruit California employee of New York plaintiff where "[p]laintiff[] do[es] not

allege events giving rise to the claim against [defendant] which occurred in New York" (citing

U.S. Surgical Corp. v. Imagyn Med. Techs., 25 F. Supp. 2d 40, 43 (D. Conn. 1998))); Insight

Data Corp., 1998 WL 146689, at *4 (where Minnesota competitor "tortiously interfered with

[New York] plaintiff's contract with [Colorado-based employee], that interference took place

either in Minnesota or in Colorado, not in New York"); cf. Cold Spring Harbor Lab. v. Ropes &

Gray LLP, 762 F. Supp. 2d 543, 556-57 (E.D.N.Y. 2011) (in legal malpractice suit based on

failed patent prosecution, venue depended on acts taken by attorney – preparing application in

Boston office and arguing before Patent and Trademark Office in Virginia – not location of

inventor-client in New York).[4]

Astor Holdings, Inc. v. Roski, No. 01 CIV. 1905 (GEL), 2002 WL 72936, at *9

(S.D.N.Y. Jan. 17, 2002), cited by Plaintiff (Pltf. Opp. (Dkt. No. 87) at 29-30), is not to the

contrary, as demonstrated by the following hypothetical offered by Judge Lynch:

> If, for example, a defendant by actions in California interfered with a business
> opportunity that existed in New York, the harm which the tort contemplates would
> occur here. But if the economic loss that resulted was inflicted on a corporation in
> Georgia, for example, that alone would not be sufficient for venue in Georgia, else
> plaintiffs could always sue in their home forum.

---

[4] Where UCL claims are premised on the same conduct as tortious interference claims, courts
evaluate venue for both claims together. See Stryker Sales Corp. v. Zimmer Biomet, Inc., No. 16
CV 01670 DAD EPG, 2017 WL 445720, at *2, *4 (E.D. Cal. Feb. 1, 2017) (in case alleging
tortious interference with contract, tortious interference with prospective economic advantage,
and unfair competition under the UCL against competitors who had recruited plaintiff's former
California sales representative – who had signed an agreement containing non-compete, non-
solicit, and confidentiality provisions – venue was not proper in plaintiff's Michigan domicile).

Although Plaintiff argues that Astor Holdings stands for the proposition that "tortious effect inside the district" can be sufficient for venue, (Pltf. Opp. (Dkt. No. 87) at 29-30 (citing Astor Holdings, 2002 WL 72936, at *9), Judge Lynch explicitly stated that "the situs of economic injury is [not], without more, a place where 'a substantial part of the events or omissions giving rise to the claim occurred.'" Id. It was only because the contract and business opportunities at issue were in this District that the court found venue was proper. See id. at *9, *11 ("[i]t is undisputed that the Venture Agreement was a New York contract to be performed in New York and governed by New York law"; "Plaintiffs contend that Defendants diverted a corporate opportunity for Robot Wars to appear on the David Letterman Show, a New York-based program").

Reynolds Corp. v. National Operator Services, Inc., 73 F. Supp. 2d 299 (W.D.N.Y. 1999), also cited by Plaintiff (Pltf. Opp. (Dkt. No. 87) at 29), is not persuasive authority. There, the court provided no analysis as to why venue was appropriate where "tortious conduct arguably occurred in Maryland, [but] plaintiff's injuries, albeit economic in nature, occurred in this district." Reynolds Corp., 73 F. Supp. 2d at 306. And the Astor Holdings court explicitly rejected Reynolds Corp. See Astor Holdings, 2002 WL 72936, at *9 ("The only case cited that directly supports Plaintiffs' argument that a court may find venue proper under [§ 1391(b)(2)] based solely on the situs of the economic harm is Reynolds Corp. . . . . [T]he case law does not support the theory that venue is proper on an economic-effects inquiry alone, and this Court respectfully declines to follow such limited non-binding authority as appears to take that view.").

Plaintiff's claims for tortious interference and unfair competition are premised squarely on Defendants' alleged soliciting and hiring of Plaintiff's employees. Six Dimensions

acknowledges that neither Brading nor Gomez – Perficient's recruiting manager – were in this District when they allegedly made the improper solicitations. (Pltf. Opp. (Dkt. No. 87) at 30) Moreover, Six Dimensions does not allege that any of its employees who were improperly solicited were employed in this District or solicited in this District. Given that the alleged improper solicitations were not made from or to this District, Six Dimensions can point to no material act giving rise to its tort claims that took place in this District. Accordingly, Plaintiff has not demonstrated that venue is proper in this District for Plaintiff's tortious interference and unfair competition claims.[5]

### 3.    Trade Secret Claims

Six Dimensions brings claims against both Defendants for common law and California statutory trade secret misappropriation,[6] alleging that both Defendants used Six Dimensions' confidential information – in the form of customer bids and software – to solicit Six Dimensions' customers. (SAC (Dkt. No. 49) ¶¶105-114, 117, 119-120) Six Dimensions argues that venue in this District for these claims is proper because "[t]he trade secrets are alleged to have been misappropriated from the New York based Plaintiff and have injured the New York based Plaintiff." (Pltf. Opp. (Dkt. No. 87) at 30-31) Defendants respond that venue for trade secret claims is proper only in districts where the trade secrets were allegedly misappropriated or used. (Perficient Br. (Dkt. No. 83) at 13-14; Perficient Reply (Dkt. No. 84) at 5-6)

---

[5] Plaintiff mentions in passing that some of the employees who were improperly solicited served clients based in New York. (Pltf. Opp. (Dkt. No. 87) at 29) Plaintiff does not rely on any loss of New York clients or lost business opportunities in New York to justify venue, however. Indeed, in the SAC, Plaintiff relies solely on Defendants' alleged tortious interference with Plaintiff's relationships with its employees; Plaintiff does not cite any lost clients or lost business opportunities in New York. (See SAC (Dkt. No. 49) ¶¶ 73-76)

[6] As discussed above in connection with Plaintiff's tortious interference and UCL claim, there does not appear to be any basis for the application of California law here.

"In order to state a claim under the California Uniform Trade Secrets Act

('CUTSA'), a plaintiff must plead facts sufficient to show (1) the existence of subject matter

which is capable of protection as a trade secret; (2) that the secret was disclosed to the defendant

under circumstances giving rise to an obligation not to use or disclose the secret to the detriment

of the discloser; and (3) the defendant either used the trade secret or disclosed it to a third party."

MedioStream, Inc. v. Microsoft Corp., 869 F. Supp. 2d 1095, 1112-13 (N.D. Cal. 2012) (citing

GlobeSpan, Inc. v. O'Neill, 151 F. Supp. 2d 1229, 1235 (C.D. Cal. 2001)).

Under New York common law, "'[a] plaintiff claiming misappropriation of a

trade secret must prove: '(1) it possessed a trade secret, and (2) defendant is using that trade

secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper

means.'" Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc., 920 F.2d 171, 173 (2d

Cir. 1990) (quoting Rapco Foam, Inc. v. Sci. Applications, Inc., 479 F. Supp. 1027, 1029

(S.D.N.Y. 1979)) (citations omitted). [7] "A trade secret may consist of any formula, pattern,

device or compilation of information which is used in one's business, and which gives him an

_____

[7] Six Dimensions does not address which state's law applies to its common law trade secret
claim. (Pltf. Opp. (Dkt. No. 87) at 25)  While Defendants argue that the common law claim is
preempted by CUTSA (Brading Reply (Dkt. No. 93) at 6), this Court need not decide that issue
for purposes of venue.  Instead, as with Plaintiff's tortious interference claims, see supra note 3,
because there does not appear to a basis for applying California common law, and because there
do not appear to be substantive differences between the elements of such a claim under
California and New York law, this court will apply New York trade secret common law to the
extent necessary to determine venue.  Compare Integrated Cash Mgmt. Servs., 920 F.2d at 173,
with Balboa Ins. Co. v. Trans Glob. Equities, 218 Cal. App. 3d 1327, 1345 n.22 (Ct. App. 1990)
("'One who discloses or uses another's trade secret, without a privilege to do so, is liable to the
other if (a) he discovered the secret by improper means, or (b) his disclosure or use constitutes a
breach of confidence reposed in him by the other in disclosing the secret to him, or (c) he learned
the secret from a third person with notice of the facts that it was a secret and that the third person
discovered it by improper means or that the third person's disclosure of it was otherwise a breach
of his duty to the other, or (d) he learned the secret with notice of the facts that it was a secret
and that its disclosure was made to him by mistake.'" (quoting Restatement of Torts § 757)).

opportunity to obtain an advantage over competitors who do not know or use it." Id. (quoting Restatement of Torts § 757 cmt. b) (citations omitted).

In TSIG Consulting, 2014 WL 1386639, at *4, the Court addressed the proper venue for a misappropriation of trade secret claim. There, the New York-based plaintiff alleged that its former employees, who worked remotely from Georgia and Tennessee, had used plaintiff's "confidential and proprietary information and trade secrets to compete with" it. TSIG Consulting, 2014 WL 1386639, at *1, *3. Plaintiff argued that venue was proper in New York because it had suffered harm in New York, and because the protected information was located in New York. Id. at *4. The court rejected this argument, ruling that the fact that "defendants may have obtained [plaintiff's] confidential information in this district, while certainly 'a link in the chain of events,' simply does not constitute an event giving rise to plaintiff's claims that defendants misused that information." Id. (quoting Horn, 2004 WL 1683158, at *6). "The conduct relevant to [plaintiff's] claims is the misuse of its information, not defendants' receipt of it." Id. (emphasis in original) (citing Daniel, 428 F.3d at 433; Horn, 2004 WL 1683158, at *6).

The circumstances here are virtually identical. Six Dimensions alleges that Brading – its former employee who resided in Ohio – helped Perficient, located in Texas, misappropriate Six Dimensions' trade secrets. Because the material acts giving rise to this claim are Brading and Perficient's "misuse of [Six Dimensions'] information, not [their] receipt of it," venue is proper where Brading and Perficient could be found at the time they allegedly misappropriated Six Dimensions' trade secrets. TSIG Consulting, 2014 WL 1386639, at *4. Because neither Brading nor Perficient resided in New York at that time, venue is improper in this District.

**B.      Venue Under Section 1391(b)(3)**

Title 28, United States Code, Section 1391(b)(3) provides that where "there is no

district in which an action may otherwise be brought as provided in this section, [venue is proper

in] any judicial district in which any defendant is subject to the court's personal jurisdiction with

respect to such action." 28 U.S.C. § 1391(b)(3).

In a single throwaway sentence, Six Dimensions asserts that even if venue is not

proper in this District under Section 1391(b)(2), it is nonetheless proper under Section

1391(b)(3), because "Defendants have utterly failed to show that any one of the venues they

prefer for this action[] satisfies Section 1391(b)(2) for each of the Claims contained in the

Second Amended Complaint." (Pltf. Opp. (Dkt. No. 87) at 31)  Defendants respond that "it is

clear that there are other districts where a substantial part of the events giving rise to Plaintiff's

purported claims arguably occurred." (Perficient Reply (Dkt. No. 84) at 2)

In contending that "Defendants have utterly failed to show" that another venue

would be proper under Section 1391(b)(2), Plaintiff misapprehends which side has the burden

here. "[I]t is the plaintiff's burden to make a prima facie showing of proper venue when faced

with a motion to dismiss pursuant to Rule 12(b)(3)." Safety Software Ltd. v. Rivo Software,

Inc., No. 11 CIV. 7433 KBF, 2012 WL 1267889, at *5 (S.D.N.Y. Apr. 11, 2012) (citing

Glasbrenner, 417 F.3d at 355). "Venue can be based on [Section 1391(b)(3)] 'only if venue

cannot be established in another district pursuant to any other venue provision,'" Rankel, 2013

WL 7161687, at *7 (quoting Daniel, 428 F.3d at 434), and Plaintiff bears the burden of

demonstrating that Section 1391(b)(3) is applicable. See Vanleeuwen v. Keyuan Petrochemicals,

Inc., No. CV 11-9495 PSG JCGX, 2013 WL 2247394, at *22 (C.D. Cal. May 9, 2013) ("[V]enue

is not proper pursuant to § 1391(b)(3) because Plaintiffs have [not] established that there is no

other judicial district in which the action may be brought . . . ." (citing Ziegler v. Indian River

County, 64 F.3d 470, 473 (9th Cir. 1996)); 14D Charles Alan Wright et al., Federal Practice and Procedure § 3806.1 (4th ed. 2015) ("[M]ost courts . . . place on the plaintiff the burden of showing that Section 1391(b)(3) applies. That is, the plaintiff must show that no district satisfied either Section 1391(b)(1) or Section 1391(b)(2) before undertaking to show that venue is proper under Section 1391(b)(3)."); see also Pfister v. Selling Source, LLC, 931 F. Supp. 2d 1109, 1120 (D. Nev. 2013) ("Plaintiff advances only one argument as to why venue is proper in this court[,] namely, that section 1391(b)(3) provides a basis for venue"; because "plaintiff makes no showing that venue cannot be proper in another district," Section 1391(b)(3) not applicable); Pisani v. Diener, No. 07-CV-5118 JFB/ARL, 2009 WL 749893, at *7 (E.D.N.Y. Mar. 17, 2009) ("Section 1391(b)(3) is not met because plaintiff cannot show that there is no district in which this lawsuit could otherwise be brought under the law. Based upon the allegations in the amended complaint (including the allegations that all defendants reside in the Southern District of Florida), venue would clearly be proper in the United States District Court for the Southern District of Florida.").

Defendants contend that venue would be proper in Ohio, because that is where Brading and several of the Six Dimensions employees she allegedly recruited reside, and that is where any improper solicitations by Brading were presumably made and received. (Perficient Br. (Dkt. No. 83) at 11) In any event, as discussed above, Plaintiff has the burden of demonstrating that no other venue exists for its lawsuit, and Plaintiff has not explained why neither Ohio nor any other district in this nation would be appropriate. Accordingly, Plaintiff has not demonstrated that venue is proper in this District under Section 1391(b)(3).

## III.    WHETHER THIS CASE SHOULD BE DISMISSED OR TRANSFERRED

"If venue is improper in the federal district court in which the action was filed, the decision whether to transfer or dismiss is evaluated under 28 U.S.C. § 1406(a) and 'lies within

the sound discretion of the district court.'" <u>Pisani</u>, 2009 WL 749893, at *8 (quoting <u>Minnette v.</u>
<u>Time Warner</u>, 997 F.2d 1023, 1026 (2d Cir. 1993)).  Section 1406(a) states that " [t]he district
court of a district in which is filed a case laying venue in the wrong division or district shall
dismiss, or if it be in the interest of justice, transfer such case to any district or division in which
it could have been brought." 28 U.S.C. § 1406(a).

   "A 'compelling reason' for transfer is generally acknowledged when a plaintiff's
case, if dismissed, would be time-barred on refiling in the proper forum." <u>Gonzalez v. Hasty</u>,
651 F.3d 318, 324 (2d Cir. 2011) (quoting <u>Moreno-Bravo v. Gonzales</u>, 463 F.3d 253, 263 (2d
Cir. 2006)).  Similarly, where a plaintiff "'request[s] that [an] action be transferred to another
forum where [the] action otherwise could have been brought pursuant to 28 U.S.C. § 1406(a)
instead of being dismissed' if the Court determines that venue is improper in this district,"
transfer would also be appropriate. <u>Micromem Techs.</u>, 2015 WL 8375190, at *7 & n.69 (citation
omitted).  Conversely, where "no party has requested a transfer to another district," the Court
may dismiss the action "without prejudice to its being filed in a district where venue is proper."
<u>TSIG Consulting</u>, 2014 WL 1386639, at *4.

   Here, Defendants have requested a transfer to the Southern District of Ohio as an
alternative to dismissal for improper venue.  Plaintiff has not requested a transfer in lieu of
dismissal, nor has Plaintiff suggested that its claims might be time-barred if dismissed.
(Perficient Br. (Dkt. No. 83) at 13; <u>see</u> Pltf. Opp. (Dkt. No. 87) at 31)  Given these
circumstances, this Court concludes that it is more appropriate to dismiss this action without
prejudice and allow Plaintiff to select another district where venue is proper.

## CONCLUSION

For the reasons stated above, Defendants' motions to dismiss for improper venue are granted, and this case is dismissed without prejudice. The Clerk of the Court is directed to terminate the motions (Dkt. Nos. 82, 90) and to close this case.

Dated: New York, New York
      March 28, 2017

SO ORDERED.

Paul G. Gardephe
United States District Judge